IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOHN J. PHILLIPS,              )      CASE NO. 3:16-cv-00880
                               )
          Petitioner,     )      JUDGE DAN AARON POLSTER
                               )
      v.              )      MAGISTRATE JUDGE
                               )      KATHLEEN B. BURKE
NEIL TURNER,              )
Warden,[1]                )
                               )      **REPORT & RECOMMENDATION**
          Respondent.    )
                               )


Petitioner John J. Phillips ("Petitioner" or "Phillips"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition"). Doc. 1. Phillips challenges the constitutionality of his convictions and sentences in *State v. Phillips*, Case No. CR-0201302772 (Lucas County). Doc. 1. In 2014, Phillips was convicted of burglary and robbery. Doc. 1, p. 1; Doc. 9-1, p. 11. The trial court sentenced Phillips to eight years' imprisonment for burglary and three years' imprisonment for robbery, to be served consecutively, for a total sentence of eleven years' imprisonment. Doc. 9-1, p. 13.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. On August 24, 2016, Respondent filed an Answer/Return of Writ. Doc. 9. On October 31, 2016, Phillips filed a Traverse. Doc. 11.

---

[1] In Respondent's Return of Writ, filed August 24, 2016, Respondent states that Phillips is incarcerated at the North Central Correctional Complex, where he is in the custody of Warden Neil Turner. Doc. 9, p. 1.

1

For the reasons set forth below, the undersigned recommends that the Court **DISMISS in part and DENY in part** Phillips's Petition (Doc. 1), because the Petition presents claims that lack merit or are not cognizable on federal habeas review and/or are procedurally defaulted.

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Sixth District Ohio Court of Appeals summarized the facts underlying Phillips's convictions as follows:

{¶ 2} On October 7, 2013, appellant entered into a residence located at 2023 Woodford, Lucas County, Ohio. The property owner, an elderly man named Alex Kekes, was inside the home at the time. Without permission to do so, appellant walked into the home through the front door, which was unlocked at the time. Upon entering, appellant made his way into the room where Kekes was standing. Appellant then proceeded to shove Kekes to the floor while demanding that Kekes hand over his money. Thereafter, appellant placed his hand into Kekes' pocket, removed $250 in cash, and ran out the door and down the alley adjacent to Kekes' house.

{¶ 3} After appellant departed, Kekes walked to his neighbor's, Paula Escareno, house. Upon entering Escareno's backyard, Escareno's daughter observed Kekes visibly shaken and crying. She alerted Escareno, who then took Kekes inside to determine what had happened. Once inside Escareno's residence, Kekes informed Escareno of the robbery, and Escareno contacted the police.

{¶ 4} A short time later, two Toledo police officers, Matthew Kovacs and Doug Rasik, arrived on the scene. Upon arrival, Kovacs noticed that Kekes was "hunched over, very scared, and visibly shaking and crying." He proceeded to question Kekes regarding the details of the incident. According to Kovacs's testimony, Kekes indicated that the man who committed the robbery was wearing a gray hooded sweatshirt, camouflage shorts, and green shoes.[1]  Kekes also informed the officers

that the man who robbed him had approached him once before. Kekes then provided the officers with a nearby address where he suspected the man lived.

> [FN 1 – At trial, Kekes testified that the robber was wearing brown pants. He denied ever informing the police that the robber was wearing camouflage shorts or a gray hooded sweatshirt.]

{¶ 5} After his interview with Kekes, Kovacs called Detective Rick Molnar to the scene. Kovacs, Rasik, and Molnar proceeded to the address provided by Kekes. Upon arrival, the officers were greeted by the resident of the home, Holly Brown. Brown consented to a search of the premises, and appellant was subsequently discovered hiding in the basement under a pile of clothes. Appellant was then escorted outside. Notably, appellant was not wearing camouflage shorts or a gray hooded sweatshirt at the time. Moreover, the $250 that was reported stolen was not found on appellant's person.

{¶ 6} After apprehending appellant, Molnar went back to Kekes' residence and obtained a physical description of the suspect that matched appellant's description. Consequently, Molnar escorted Kekes to the location where appellant was being detained and asked Kekes to identify appellant. Kekes identified appellant as the man who committed the robbery.

{¶ 7} Appellant was subsequently arrested and taken to the police station for questioning. During the interview between appellant and Molnar, which was recorded and played back at trial, appellant changed his version of the events several times. Appellant began the interview by insisting that he was not the perpetrator. He stated that another man, Rob, was the actual perpetrator of the crimes. However, appellant was unable to provide a last name for Rob, and Molnar was unable to locate a person named Rob that matched appellant's description. Upon further questioning, appellant admitted that he entered Kekes' home without permission to do so and demanded that Kekes hand over his money.

{¶ 8} On October 16, 2013, appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, and one count of robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree. Additionally, a repeat violent offender specification was attached to the burglary count pursuant to R.C. 2941.149. A jury trial was held, after which appellant was found guilty of both counts. The repeat violent offender specification was subsequently dismissed prior to sentencing.

{¶ 9} At sentencing, the court imposed a prison term of 8 years on the burglary count and 36 months on the robbery count, ordering the sentences to be served consecutively. In arriving at its sentence, the court highlighted appellant's criminal history, which includes 10 prior felony convictions and 28 prior misdemeanor convictions.

*State v. Phillips*, 2015 WL 753529, at *1-2 (Ohio Ct. App. Feb. 20, 2015).

## II.    Procedural Background

### A.  State conviction

In October 2013, a Lucas County Grand Jury indicted Phillips for one count of burglary, with a repeat violent offender specification, and one count of robbery.  Doc. 9-1, pp. 3-5. Phillips entered a plea of not guilty to all charges.  Doc. 9-1, p. 6.

Phillips's jury trial commenced on March 3, 2014.  *See* Doc. 9-1, p. 132.  On March 4, 2014, the jury found Phillips guilty of burglary and robbery.  Doc. 9-1, p. 11.  The State dismissed the violent offender specification before sentencing.  Doc. 9-1, p. 14.  On March 6, 2014, the trial court conducted a sentencing hearing.  Doc. 9-1, p. 14.  It first found that Phillips's convictions for burglary and robbery were not allied offenses of similar import for purposes of sentencing.  Doc. 9-1, p. 13.  It then sentenced Phillips to eight years' imprisonment for burglary and three years' imprisonment for robbery, to be served consecutively, for a total sentence of eleven years' imprisonment.  Doc. 9-1, p. 14.

### B.  Direct appeal

Phillips, through new counsel, appealed to the Sixth District Court of Appeals.  Doc. 9-1, pp. 20-26.  He raised the following assignments of error:

1. The decision of the trial court was insufficient and against the manifest weight of the evidence.

2. The court abused its discretion by sentencing appellant to two consecutive maximum sentences in violation of [Ohio Rev. Code §] 2929.14(B)(2)(c).

Doc. 9-1, p. 28. The State filed its appellate brief on September 17, 2014. Doc. 9-1, pp. 48-66.

On February 20, 2015, the Sixth District Court of Appeals affirmed the judgment of the trial court. Doc. 9-1, pp. 67-77; *Phillips*, 2015 WL 753529.

On April 2, 2015, Phillips, acting *pro se*, filed a timely notice of appeal in the Ohio Supreme Court. Doc. 9-1, pp. 78-90. In his memorandum in support of jurisdiction, he set forth the following propositions of law:

1. The Appellants [*sic*] conviction is not supported by the record as the evidence at trial was insufficient and against the manifest weight of the evidence.

2. The trial court abused its discretion by sentencing the appellant to consecutive maximum sentences in violation of [Ohio Rev. Code §] 2929.14(B)(2)(c).

Doc. 9-1, p. 92. The court declined jurisdiction of the appeal on June 24, 2015. Doc. 9-1, p. 112.

## C. Application to Reopen Direct Appeal

Meanwhile, on April 14, 2015, Phillips, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B) in the Sixth District Court of Appeals. Doc. 9-1, pp. 113-22. In his application, Phillips alleged that he was denied the effective assistance of appellate counsel for failing to raise the following assignment of error on direct appeal:

The Appellants [*sic*] Sixth and Fourteenth Amendment rights were violated when he was sentenced to maximum consecutive sentences in contravention to Ohio Revised Code § 2929.41(A); and laws under *Apprendi v. New Jersey*, 120 [S. Ct.] 2368 [(2000),] and *Blakely v. Washington*, 124 S. Ct. 2531 [(2004)].

Doc. 9-1, p. 115.

The state appellate court denied Phillips's application on April 29, 2015.  Doc. 9-1, pp. 123-27.  The undersigned finds no record in the docket of the Ohio Supreme Court indicating that Phillips appealed that judgment.[2]

**D.  Federal habeas corpus**

On April 13, 2016, Phillips, acting *pro se*, filed his federal habeas petition.  Doc. 1.  In his Petition, he asserts two grounds for relief.  Doc. 1, pp. 4-6.  Respondent filed his Return of Writ on August 24, 2016.  Doc. 9.  On October 31, 2016, Phillips filed a Traverse.  Doc. 11.

Each of Phillips's grounds for relief is addressed below.

### III.    Law and Analysis

**A.  Standard of review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] *See* http://www.supremecourt.ohio.gov/Clerk/ecms/#/search.  *See* Fed. R. Evid. 201(b)(2) (allowing a court "to judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." ; *see also e.g., Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## B. Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[3] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

---

[3] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681.

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[4] *Id.* Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure

---

[4] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## C. Grounds for relief

### 1. To the extent Ground One is cognizable on habeas, it is meritless and should be DENIED.

**Ground One**: The Appellants [*sic*] conviction is not supported by the record as the evidence at trial was insufficient and against the manifest weight of the evidence in violation of Petitioner's Fourteenth Amendment right of [d]ue [p]rocess and [the] united States Supreme Court ruling in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d [1979].

**Supporting Facts:**

1) At trial the victim did not identify who had entered his home.

2) Description of intruder does not match description of Petitioner.

3) Description of the clothing that the intruder was wearing did not match the clothing the Petitioner was wearing, nor were the clothes observed or found in the vicinity of the Petitioner.

4) The monies that were to have been taken from the victim was never found on or in the vicinity of the Petitioner.

5) The Petitioner was presented to the alleged victim in an [*sic*] suggestive line-up as he was surrounded and detained by the police.

Doc. 1, pp. 4-5.

As he does here, Phillips raised in state court his claims of manifest weight of the evidence and sufficiency of the evidence together, without separate analysis or argumentation. *See* Doc. 9-1, pp. 33–38, 96-98. The state appellate court adjudicated each claim on the merits separately and denied them both. *Phillips*, 2015 WL 753529, at *2-4. The Ohio Supreme Court declined jurisdiction. Doc. 9-1, p. 112.

### a. Manifest weight of the evidence

Respondent argues that, to the extent Ground One is premised upon a claim challenging the manifest weight of the evidence, it is not a cognizable claim for federal habeas relief. Doc. 9, pp. 8-11. Phillips appears to concede this point. He drops the manifest-weight claim in his Traverse and restates Ground One as: "The trial court erred when it denied [P]etitioner's motion for acquittal in violation of Petitioner's Fourteenth Amendment right of [d]ue [p]rocess and United States Supreme Court ruling in *Jackson v, Virginia*, 443 U.S.307 [1979]." Doc. 11, p. 11.

Even if Phillips did not abandon his manifest weight of the evidence claim, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)). Indeed, as Respondent asserts, it is well settled that claims regarding the manifest weight of the evidence are grounded in state law and therefore not cognizable on federal habeas. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** Phillips's manifest-weight claim as non-cognizable on federal habeas review.

### b. Sufficiency of the evidence

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the jury's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not "whether the trier of fact made the *correct* guilt or innocence determination but, rather whether it made a *rational* decision to convict or

acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Snyder v. Marion Correctional Inst., Warden*, 608 Fed. Appx. 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S. Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Here, the Sixth District Court of Appeals, the last state court to review the claim, applied the correct standard under *Jackson*, stating:

> {¶ 11} In his first assignment of error, appellant contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 12} When evaluating whether the evidence was sufficient to sustain a conviction, we must determine whether the evidence admitted at trial, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.E.2d 560 (1979); *see also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Therefore, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jenks* at paragraph two of the syllabus.

*Phillips*, 2015 WL 753529, at *2.

The state court then examined Phillips's sufficiency claim, as follows:

{¶ 13} Here, the state introduced evidence as to every element of the offenses of burglary and robbery. The elements of burglary under R.C. 2911.12(A)(1) require the state to prove that the defendant (1) by force, stealth, or deception (2) trespassed in an occupied structure when another person other than an accomplice was present (3) with the purpose to commit any criminal offense therein. The elements of robbery under R.C. 2911.02(A)(3) require the state to prove that (1) the defendant, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, (2) threatened the immediate use of force against another.

{¶ 14} During its case-in-chief, the state established that appellant opened the front door of Kekes' home and entered through the doorway while Kekes was inside. Further, during Kekes' testimony, he stated that he did not consent to appellant's entrance into the home. Notably, appellant admitted that he entered Kekes' home without permission to do so during his interview with Detective Molnar, which was admitted into evidence at trial. During that interview, appellant indicated that he entered the home in order to secure cash so that he could purchase food. We conclude that the foregoing evidence is sufficient to support appellant's conviction for burglary. *See State v. Knight*, 6th Dist. Lucas No. L–13–1066, 2014–Ohio–2222, ¶ 12 ("A burglary is complete once the perpetrator enters the occupied residence with the intent to commit a crime.").

{¶ 15} Regarding appellant's conviction for robbery, Kekes testified that, once appellant entered the home, he demanded that Kekes hand over his cash. When Kekes refused, appellant shoved him to the ground and removed the money from

his pocket. Such evidence is sufficient to support appellant's conviction for robbery. *See id*. ("Robbery occurs after entry into the home when the perpetrator encounters the victim inside the home and steals something from him or her by force or threat of force.").

*Phillips*, 2015 WL 753529, at *2-3.

The court then addressed Phillips's manifest-weight claim, stating:

{¶ 16} Having concluded that each of appellant's convictions were supported by sufficient evidence, we now turn to appellant's argument that the convictions were against the manifest weight of the evidence.

{¶ 17} When reviewing a manifest weight claim, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 220.

{¶ 18} In support of his manifest weight argument, appellant notes that, when he was discovered hiding under a pile of clothes in the basement, he was not wearing a gray hooded sweatshirt or camouflage pants as described by Kekes. Appellant also contends that the officers did not find $250 in cash on his person when they apprehended him. Further, appellant references Kekes' report to the police that the robber walked with a limp, noting that he does not walk in such a manner. Given these details, appellant argues that the jury's determination of guilt was against the manifest weight of the evidence. Moreover, appellant urges this court to discard Kekes' face-to-face identification of appellant shortly after the robbery, arguing that the identification was unreliable given Kekes' age and the fact that Molnar told Kekes that appellant was a "suspect."

{¶ 19} Having reviewed the record in its entirety, we cannot agree with appellant that this is the exceptional case in which the evidence weighs heavily against the conviction. Appellant's arguments concerning his clothing and the $250 in cash are explainable in light of the amount of time that passed between the robbery and appellant's arrest. Indeed, appellant was found buried underneath a pile of clothes, a fact that could lead one to conclude that he changed his clothes after committing the robbery. Furthermore, appellant acknowledged that he needed the money to

purchase food during his interview with Molnar. He also indicated that he had a problem with drug abuse. Thus, one could infer that appellant had already spent the cash that was stolen from Kekes. Concerning Kekes' report that the robber walked with a limp, we agree with appellant that such testimony seems to refer to someone other than appellant. Nonetheless, given Kekes' unequivocal identification of appellant as the robber on the day of the crime, coupled with appellant's admissions, we find that appellant's convictions were not against the manifest weight of the evidence. We further find no merit to appellant's inference that the "standard procedures" used by the police in this case rendered Kekes' identification unreliable or "legally insufficient."

*Phillips*, 2015 WL 753529, at *3-4.

Phillips first argues that "[t]he lower courts in this case gave a determination of manifest weight of the evidence, and not to the test of sufficiency of the evidence to sustain this conviction." Doc. 11, p. 13.[5] The undersigned disagrees. The state appellate court accurately stated the constitutional standard for sufficiency claims and the elements necessary to establish the offenses of burglary and robbery under Ohio law. It then clearly applied that law to the facts adduced at trial, finding Phillips's convictions for burglary and robbery sufficiently supported by the evidence.

Phillips next appears to claim that the State failed to prove that his actions were committed "knowingly," which is necessary to prove both offenses, because they are predicated on proof of culpability of other offenses (theft for robbery and trespass for burglary) which include the mental state of "knowingly" (*see* Ohio Rev. Code § 2913.02 (theft); Ohio Rev. Code § 2911.21 (trespass)). Doc. 11, p. 14.[6] But Phillips fails to provide any argumentation or offer

---

[5] Phillips did not raise this argument in the Ohio Supreme Court. The claim, therefore, may be procedurally defaulted. Respondent, however, did not assert a procedural default defense to this claim, and the defense may therefore have been waived. *See, e.g., Trest v. Cain*, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserve' if it is not to 'lose the right to assert the defense thereafter.'") (citing *Gray v. Netherland*, 518 U.S. 152, 166 (1996)).

[6] This claim also may be procedurally defaulted because Phillips raises it here for the first time. But, again, since Respondent did not assert procedural default with respect to this claim, the defense may have been waived.

any evidence to support this assertion.  The state court cited evidence admitted at trial demonstrating that Phillips committed theft and trespass under Ohio law.  It noted, for example, that Phillips "admitted that he entered Kekes' home without permission to do so during his interview with Detective Molnar," establishing trespass.  *Phillips*, 2015 WL 753529, at *3.  It also observed that Kekes testified that, once Phillips entered the home, he told Kekes to give him his money, and when Kekes refused, Phillips pushed him to the ground and took the money out of his pocket, establishing theft.  *Phillips*, 2015 WL 753529, at *3.  This is sufficient evidence that Phillips knowingly committed burglary and robbery as they are defined under Ohio law, and this argument fails.

Finally, Phillips challenges the State's evidence against him, contending:  (1) the evidence presented did not establish that he "even entered" Kekes's home and, specifically, "the victim did not identify who had entered his home";  (2) there was no supporting physical evidence, such as the stolen money or DNA evidence from Kekes's clothing; (3) he did not match Kekes's description of the assailant to police, because he was found in different clothing than Kekes described, and in fact no such clothing was ever found, and he did not walk with a limp, which Kekes ascribed to the perpetrator[7]; and (4) Kekes's face-to-face police identification was improper.  Doc. 1, p. 5; Doc. 11, p. 15.[8]  These arguments are meritless.

---

[7]  Phillips argues in his Traverse that Kekes did *not* describe the assailant to police as walking with a limp whereas he *does* walk with a limp.  Doc. 11, p. 15.  However, Phillips's arguments to the state court and the state appellate court opinion state the reverse, i.e., that Kekes told the police the intruder walked with a limp, but Phillips did not walk in that manner.  *See, e.g., Phillips*, 2015 WL 753529, at *3-4, ¶¶ 18-19; Doc. 9-1, p. 36 (Petitioner's state appellate court brief); Doc. 9-1, p. 97 (Petitioner's Memorandum in Support of Jurisdiction).

[8]  The state appellate court considered some of these arguments, or sub-claims, in reference to Phillips's manifest-weight claim.  *Phillips*, 2015 WL 753529, at *3-4.  However, Phillips raised the arguments in state courts as support for *both* his manifest-weight and sufficiency claims, and they were adjudicated on the merits.  The undersigned, therefore, has reviewed Phillips's arguments raised with regard to his sufficiency and manifest-weight claims under AEDPA's deferential § 2254(d)(1) standard.  *Cf. Nash v. Eberlin*, 258 Fed. Appx. 761, 765 n.4 (6th Cir. 2007) (liberally construing *pro se* habeas petitioner's manifest-weight-of-the-evidence claim to be a sufficiency-of-the-evidence claim, concluding that Ohio courts had "adequately passed upon" the petitioner's sufficiency claim

First, Phillips's claim that the State produced no evidence that Phillips entered Kekes's home, or that, "[a]t trial the victim did not identify who had entered his home," is misplaced. Although Kekes did not mention Phillips's name while testifying, during his testimony Kekes confirmed his identification of his assailant in this exchange:

> Q:  Okay, the person that the police had, was that the person who had came [*sic*] into your home and took your money on this day?
>
> A:  Yes.
>
> Q:  And you told the police that he was the one?
>
> A:  Yes.

Doc. 9-2, p. 130; *see also* Doc. 9-2, pp. 191-192 (Detective Molnar's description of Kekes's identification of Phillips).  Moreover, Phillips admitted to the police that he entered Kekes's home without permission.  *Phillips*, 2015 WL 753529, at *3.  The undersigned will "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205.

Phillips similarly asks for a reweighing of the evidence when he argues that he did not match Kekes's description of the intruder in either his clothing or his manner of walking.  The defense vigorously cross-examined the police regarding these discrepancies between Phillips and Kekes's identification of his assailant and focused on them in closing argument.  *See* Doc. 9-2, pp. 198-203, 245-55.  Thus, the state appellate court was not unreasonable in concluding that, despite the differences between Kekes's description of the assailant and Phillips's clothing and gait, there was a reasonable explanation for these discrepancies and the other evidence of

---

because the "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence").

Phillips's guilt – including an "unequivocal" identification and admission – was sufficient to support the conviction.

As to the missing cash and lack of DNA evidence, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson*, 200 F.3d at 992. And, finally, the undersigned rejects Phillips's claim that the state appellate court improperly concluded that the face-to-face identification conducted by the police was "standard police procedure[]" and neither unreliable nor legally insufficient. *Phillips*, 2015 WL 753529, at *4. A federal habeas court must defer to, and is bound by, state-court rulings on state law. *See, e.g., Estelle*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Upon reviewing the evidence in the light most favorable to the prosecution, the undersigned finds that a rational trier of fact could have found the essential elements of robbery and burglary beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Accordingly, the state appellate court's decision rejecting Phillips's claim of insufficiency of the evidence was neither contrary to, nor an unreasonable application of, *Jackson*. The undersigned, therefore, recommends that the Court **DENY** Phillips's sufficiency of the evidence claim in Ground One as meritless.

### 2. Ground Two

**Ground Two**: The Appellants [*sic*] Sixth and Fourteenth Amendment rights were violated when he was sentenced to maximum consecutive sentences in contravention to the Ohio Revised Code § 2929.41(A); and laws under *Apprendi v. New Jersey*, 120 [S. Ct.] 2368 [(2000),] and *Blakely v. Washington*, 124 S. Ct. 2531 [(2004)].

**Supporting Facts:**

1) The [t]rial [c]ourt used findings to impose maximum and consecutive sentences without presenting these findings to a jury and proving them beyond a reasonable doubt.

2) The [t]rial [c]ourt sentenced Petitioner to allied offenses as they were never merged for sentencing purposes.

Doc. 9-1, p. 6.

**a. Ground Two is not cognizable on federal habeas review**

Respondent first argues that Ground Two – including claims challenging his maximum consecutive sentences under both *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), and the Double Jeopardy Clause – is not cognizable on federal habeas review. Doc. 9, p. 11-12.

Indeed, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus. *See e.g., Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) ("A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.") (citing *Howard v. White,* 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003)*; Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003)*; Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam))*.

Additionally, a trial court's imposition of consecutive sentences does not implicate federal constitutional concerns. *See Oregon v. Ice*, 555 U.S. 160, 171 (2009); *see also Wilkins v.*

*Warden, Chillicothe Correctional Inst.*, 2010 WL 5795505, * 19 (S.D. Ohio Sept. 2, 2010),

*report and recommendation adopted*, 2011 WL 549916 (S.D. Ohio Feb. 8, 2011) (indicating that

"the Supreme Court has made it clear that consecutive sentences may be imposed without

implicating any concerns under the Sixth Amendment.") (citing *Ice*, 555 U.S. 160); *see also*

*Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (concluding that a petitioner's challenge

to the aggregation of several sentences involved a matter of state law and was not cognizable in

the federal habeas proceeding).

      Also, for the reasons set forth below, to the extent that Phillips claims that the failure to

merge the two offenses violated his federal constitutional rights, this Court must defer to the state

court's determination that the offenses were not allied offenses and merger was not required.

      "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution

states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of

life or limb . . .' The clause was incorporated against the states through the enactment of the

Fourteenth Amendment." *Person v. Sheets*, 527 Fed. Appx. 419, 423 (6th Cir. 2013) (citing

*Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). "[A] defendant may

not be subject to multiple punishments unless the state legislature intended to so punish."

*Person*, 527 Fed. Appx. at 423 (citing *Missouri v. Hunter*, 459 U.S. 359, 367-368, 103 S.Ct. 673,

74 L.Ed.2d 535 (1983)). "The Double Jeopardy Clause 'protects against a second prosecution

for the same offense after acquittal. It protects against a second prosecution for the same offense

after conviction. And it protects against multiple punishments for the same offense.'" *Duncan v.*

*Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d

688, 696 (6th Cir. 2013) (internal citations omitted)).

      As stated by the Sixth Circuit:

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180. <u>The *Blockburger* test, however, is a "rule of statutory construction,"</u> *Albernaz,* 450 U.S. at 340, 101 S.Ct. 1137 (quoting *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)), <u>"not a constitutional test in and of itself,"</u> *McCloud v. Deppisch,* 409 F.3d 869, 875 (7th Cir.2005), *as quoted in Palmer v. Haviland,* 273 Fed.Appx. 480, 486 (6th Cir.2008) (unpublished); *see Hunter,* 459 U.S. at 368, 103 S.Ct. 673 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). <u>As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."</u> *697 Johnson,* 467 U.S. at 499 n. 8, 104 S.Ct. 2536; *accord Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673.

*Volpe v. Trim*, 708 F.3d 688, 696-697 (6th Cir. 2013) (emphasis supplied).

In Ohio, to determine whether the legislature intended to authorize cumulative punishments, courts apply O.R.C. § 2941.25 (Ohio's multiple counts statute), not the *Blockburger* test.  *See Volpe*, 708 F.3d at 697; *see also Jackson v. Smith*, 745 F.3d 206, 212 (6th Cir. 2014), *cert denied, Jackson v. Lazaroff*, 135 S.Ct. 118 (2014) ("Ohio courts apply . . . [O.R.C. § 2941.25], not the *Blockburger* test, to ascertain the Ohio legislature's intent."). Further, "when assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe*, 708 F.3d at 697 (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989); *see also Galvan v. Prelesnik*, 588 Fed. Appx. 398, * 401 (6th Cir. 2014); *Gilbert v. Burkes*, 2016 WL 3648280, * 10-11 (N.D. Ohio Apr. 21, 2016), *report and recommendation adopted*, 2016 WL 3555371 (N.D. Ohio June 30, 2016).  "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature

intended cumulative punishments, a federal court must defer to that determination." *Volpe*, 708 F.3d at 697; *see also Galvan*, 588 Fed. Appx. 398, * 401; *Gilbert*, 2016 WL 3648280, * 10-11.

Here, the state court of appeals considered Phillips's claim that the trial court erred in failing to merge the robbery and burglary offenses as allied offenses of similar import. *Phillips*, 2015 WL 753529, * 4. After discussing O.R.C. § 2941.25, the state court of appeals concluded that:

> {¶ 26} . . . in this case, we find that the trial court did not err in failing to merge appellant's robbery conviction with his burglary conviction. Here, appellant committed a burglary when he opened the front door and entered into Kekes' residence while Kekes was inside with the intent to commit a felony. He then committed a robbery by shoving Kekes to the ground and removing his money from his pocket. Since the two offenses were not committed by a single act with a single state of mind, they are not allied offenses of similar import.

*Phillips*, 2015 WL 753529, * 5.

As indicated above, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe*, 708 F.3d at 697; *see also Galvan*, 588 Fed. Appx. 398, * 401; *Gilbert*, 2016 WL 3648280, * 10-11, *report and recommendation adopted*, 2016 WL 3555371. Accordingly, since the state court of appeals determined in this case that the offenses of robbery and burglary were not allied offenses requiring merger, this Court must defer to that decision. *See e.g., Gilbert*, 2016 WL 3648280, * 10-11 (recommending dismissal of ground for relief premised on violation of Double Jeopardy Clause because claim was non-cognizable).

For the foregoing reasons, the undersigned recommends that the Court **DISMISS** Ground Two because it is not cognizable on federal habeas review.

**b. Ground Two is procedurally defaulted**

Alternatively, to the extent Ground Two presents a cognizable claim, it is procedurally defaulted. As Respondent argues (Doc. 9, pp. 18-19), Phillips did not fairly present his sentencing claim to state courts as a federal constitutional issue. In addressing this claim in his state-court briefs, Phillips did not couch his legal arguments in constitutional terms, or otherwise employ language that might have indicated the assertion of federal constitutional claims. In the state appellate court, Phillips's arguments relied exclusively on Ohio law. *See* Doc. 9-1, pp. 39-40. In his jurisdictional memorandum in the Ohio Supreme Court, he made just one reference to the United States Supreme Court's decision in *Blakely v. Washington*, 125 S. Ct. 21 (2004), with no accompanying argumentation or analysis of that case or the federal constitutional principles applied in it. Doc. 9-1, pp. 98-99. This case citation is too general and cursory to fairly present the substance of a federal claim to the state courts. "A petitioner need not cite 'chapter and verse' of constitutional law, . . . but 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.'" *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) (quoting *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)) (holding petitioner did not fairly present his federal claim in state court). *See also Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (finding claim of "denial of due process and a fair trial" in violation of "14th and 6th Amendments" without citation to federal constitutional cases insufficient for fair presentation).

Moreover, Phillips no longer is able to fairly present this sentencing claim as a federal constitutional claim to state courts. The claim arises out of the record of proceedings in the trial

court, and therefore could have been raised on direct appeal. Phillips failed to do so, however, and, under Ohio law, *res judicata* now prohibits him from raising the issues in any post-conviction proceeding. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that res judicata bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). With no state court remedies still available to him, Phillips has defaulted this claim. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted).

Phillips advances several causes to excuse the default. *See* Doc. 11, pp. 7-9. He first argues that he "is a pro se litigant and . . . not educated in the laws . . . ." Doc. 11, p. 7. It is well-established, however, that "[c]ause for procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted); *Murray v. Carrier*, 447 U.S. 478, 488 (1986). Thus, a petitioner's *pro se* status and his ignorance of the law and procedural requirements are insufficient to establish cause to excuse his procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Hanna v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

Phillips also asserts as cause the fact that he is in prison, where he "must rely on the institution staff to mail documents timely" and has "limited access to the law." Doc. 11, pp. 7, 12. Again, this is not sufficiently external under *Maples* and *Murray* to establish cause to overcome procedural default. *See Bonilla*, 370 F.3d at 498 (finding petitioner's inability to conduct legal research due to prison rules and restrictions insufficient to establish cause for default).

Finally, Phillips claims his "counsel in the initial review proceedings failed to litigate proper claims thus . . . they were ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 [1984]." Doc. 11, p. 9. "Attorney error that constitutes ineffective assistance of counsel is cause." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). Claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim, however, if the ineffective-assistance claim itself is procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Phillips raised a claim of ineffective assistance of appellate counsel based on the failure to raise a federal constitutional sentencing claims in his state-court application for reopening. Doc. 9-1, pp. 115-21. However, as Respondent argues, he procedurally defaulted that claim in state court on two separate grounds.

First, Phillips procedurally defaulted the ineffective-assistance claim by failing to submit a sworn statement with his application as required by Ohio Appellate Rule 26(B)(2)(d), a violation on which the state appellate court clearly and expressly based its denial of his application. *See, e.g., Thompson v. Anderson,* 2010 WL 4025936, at * 7 (N.D. Ohio Mar. 19, 2010) , *report and recommendation adopted*, 2010 WL 4026121 (N.D. Ohio Oct. 13, 2010) ("[T]he requirement of a sworn supporting affidavit satisfying Rule 26(B)(2)(d) is firmly established and regularly followed, so as to constitute an adequate and independent state

procedural rule."); *Belcher v. Smith*, 2010 WL 256501, at *6 (N.D. Ohio Jan. 21, 2010) (adopting report & recommendation) ("This case, however, poses a distinct question as to the third prong of *Maupin*, i.e., whether the requirement of a sworn supporting affidavit within Rule 26(B)(2)(d) was firmly established and regularly followed, so as to constitute an adequate and independent state procedural rule, a proposition which this Court finds to be true."). *See also Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000) (finding state court's alternative merits analysis does not excuse procedural default when the court clearly and expressly relied on a procedural bar).

Phillips further defaulted this claim by failing to appeal the state appellate court judgment to the Ohio Supreme Court, leaving him with no available state-court remedy. *See, e.g., Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (to preserve claims for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims"); S. Ct. Prac. R. 7.01(A) (notice of appeals in Ohio Supreme Court must be filed within forty-five days from entry of judgment being appealed); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

Moreover, Phillips offers no argument regarding the cause for, or prejudice resulting from, the default of the appellate counsel ineffective-assistance claim, or that he is actually innocent. Phillips, therefore, cannot rely on the ineffective assistance of his appellate counsel to establish cause for Ground Two's procedural default.

Accordingly, Phillips has not established cause to overcome the procedural default of Ground Two. Since Phillips has not established "cause," the undersigned need not consider the

"prejudice" prong of the procedural default analysis.  *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  Phillips also does not argue that he is actually innocent such that the default of these claims should be excused.

For the foregoing reasons, the undersigned recommends that the Court **DISMISS** Ground Two on the alternative ground that it is procedurally defaulted.

### IV.      Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS in part and DENY in part** Phillips's Petition (Doc. 1), because the Petition presents claims that lack merit or are not cognizable on federal habeas review and/or are procedurally defaulted.

Dated: April 25, 2017

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).